# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE MOAPA BAND OF PAIUTE INDIANS, a federally recognized Tribe of Indians; SIERRA CLUB, a California non-profit corporation, | 2:13-cv-01417-JAD-NJK |
| | **Order Granting Joint Motion to Approve Settlement** |
| Plaintiffs | [ECF 105] |
| v. | |
| NEVADA POWER CO. d/b/a NV ENERGY; CALIFORNIA DEPARTMENT OF WATER RESOURCES, | |
| Defendants | |

This matter comes before me on the joint motion to approve the settlement agreement between plaintiffs The Moapa Band of Paiute Indians (Moapa Paiute) and the Sierra Club on one hand, and defendants the Nevada Power Company and the California Department of Water Resources (CDWR) on the other.[1]  Having reviewed the settlement agreement, the joint motion, the Government's statement of interest and comments on the proposed settlement,[2] and the pleadings, and having heard from the parties at oral argument held on the joint motion on October 14, 2015, and being fully advised, I find as follows:

1.     This action is a citizen suit under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* (CWA) and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* (RCRA) alleging violations of 33 U.S.C. § 1311 for the unlawful discharge of pollutants and violations of 42 U.S.C. §§ 6972 and 6945 for imminent and substantial endangerment and open dumping at a coal-fired power plant in Moapa, Nevada, that is owned in part and operated by Nevada Power and owned in part by CDWR.

2.     I have jurisdiction over the subject matter of, and persons in, this action.

---

[1] ECF 105.

[2] ECF 110.

3. Notice of the proposed settlement agreement required under 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5 was given to the United States Department of Justice and the United States Environmental Agency on July 24, 2015.

4. The United States Department of Justice submitted comments to the court regarding the proposed settlement agreement on September 15, 2015.

5. The settlement is appropriate for approval under the CWA and the RCRA.

6. The parties are directed to comply with the terms of the settlement agreement that they entered into on July 16, 2015, a copy of which is attached and incorporated by reference into this order as if fully set forth herein.

Accordingly, IT IS HEREBY ORDERED that the joint motion to approve settlement **[ECF 105] is GRANTED.**

IT IS ORDERED, ADJUDGED, AND DECREED that the claims asserted in this case are **DISMISSED with prejudice.  The Clerk of Court is instructed to close this case.**  I expressly retain jurisdiction over this action for the purposes of (1) enforcing the settlement agreement between the parties and the terms of that agreement, which has been incorporated into this order by reference, and (2) deciding any applications for attorney's fees and costs.

IT IS FURTHER ORDERED that, if the parties subsequently reach a proposed settlement over costs and attorney's fees, they will provide the United States Department of Justice and the United States Environmental Agency with supplemental notice as required by 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5.

IT IS FURTHER ORDERED that the Moapa Paiute will notify the court, the United States Department of Justice, the United States Environmental Agency, Nevada Power, and the CDWR if the uses that the supplemental-environmental project (SEP) payments are allotted to change.

IT IS FURTHER ORDERED that, after the SEP funds have been disbursed, the Moapa Paiute will notify the court, the United States Department of Justice, the United States Environmental Agency, Nevada Power, and the CDWR how the SEP funds were spent.

IT IS FURTHER ORDERED that the Moapa Paiute and the Sierra Club's request to extend by two weeks (a) the time under LR 54-1 to file a bill of costs, and (b) the time under LR 54-16 to move for an award of attorney's fees is **GRANTED.**  The Moapa Paiute and Sierra Club will have until **Thursday, November 12, 2015**, to file their bill costs and motion for attorney's fees.

Dated this 14th day of October, 2015

_____
Jennifer A. Dorsey
United States District Judge

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** ("**Settlement Agreement**") is made as of this 16th day of July, 2015, by and among The Moapa Band of Paiute Indians, a federally recognized Tribe of Indians (the "**Moapa Paiutes**"), and Sierra Club, a California non-profit corporation (collectively, the "**Plaintiffs**"), and Nevada Power Company d/b/a NV Energy ("**NPC**") and the California Department of Water Resources ("**CDWR**") (collectively, the "**Defendants**").  Each of the Plaintiffs and Defendants may be referred to herein as a "**Party**" and collectively as the "**Parties**."

<u>RECITALS</u>

WHEREAS, the Plaintiffs, on the one hand, and the Defendants, on the other hand, are counterparties in *Moapa Band of Paiute Indians et al. v. Nevada Power Company et al.*, Case No. 2:13-cv-01417-JAD-NJK, in the United States District Court for the District of Nevada (the "**Action**"), pursuant to which Plaintiffs have brought certain claims against Defendants regarding Defendants' past and current operations at the Reid Gardner Generating Station (the "**Reid Gardner Site**" or "**Reid Gardner Plant**");

WHEREAS, there is an Administrative Order on Consent, into which NPC entered in February 2008 (the "**AOC**"), which pertains to environmental investigation and remediation of the Reid Gardner Site;

WHEREAS, the Parties desire to resolve their differences, settle the Action, effectuate the dismissal with prejudice of the Action, and have the United States District Court for the District of Nevada (the "**Court**") approve and retain jurisdiction to enforce the terms of this Settlement Agreement;

<u>AGREEMENT</u>

NOW, THEREFORE, for and in consideration of the mutual covenants, promises, and agreements contained herein, the dismissal of the Action, and for other good and valuable consideration, the receipt, adequacy, and sufficiency of which are hereby expressly acknowledged by the Parties hereto, the Parties do hereby agree as follows:

1.      <u>Information Sharing</u>:  NPC commits to information sharing during the course of investigation, characterization, determination of corrective actions, and post-closure monitoring at the Reid Gardner Site.  The principles of such an information-sharing framework are as follows.  Through the end of the AOC as determined by the date when the Nevada Division of Environmental Protection ("**NDEP**") signs a finalization or closure letter officially terminating the AOC process, NPC will do the following:

(a)      NPC will be available to meet in person with Plaintiffs' environmental consultant(s) every quarter, as requested, to discuss progress of ongoing efforts under the AOC, and near and long-term schedules for such investigation and remediation.

1

(b)     As reasonably requested by Plaintiffs, NPC will arrange further periodic web-based or telephonic meetings to discuss significant "work-in-progress" issues of particular significance under the AOC.

(c)     NPC will provide a copy to Plaintiffs of all AOC draft and final work plans, as well as provide a copy of final, official correspondence requesting or receiving agency action or direction regarding the AOC, that NPC submits to or receives from the Nevada Division of Environmental Protection.

(d)     NPC will permit Plaintiffs' consultants access to observe AOC-related investigation, characterization, and corrective-action work in progress (*e.g.*, well drilling, sample collection, etc.), such observation to be of a reasonable nature and coordinated in advance with NPC.

For a period of five (5) years following final closure of the AOC by NDEP, NPC will do the following:

(e)     NPC will copy the Moapa Paiutes on official monitoring documentation that it submits to NDEP.

2.     <u>Commitment to Retire All Existing Reid Gardner Plant Coal Units</u>:  NPC agrees to permanently close and retire Reid Gardner Unit 4 by December 31, 2017.

3.     <u>Supplemental Environmental Project Payment</u>:  Defendants shall pay to the Moapa Paiutes four million three-hundred thousand dollars ($4,300,000) (the "**Supplemental Environmental Project Payment**") for the following supplemental environmental projects, or equivalent projects that the Moapa Paiutes may choose at their sole discretion.  Plaintiffs assert that the purpose of these projects, or any equivalent projects is to mitigate the harm and risk associated with contamination of the Reid Gardner site, and Plaintiffs identify those projects and their estimated costs as follows:

(a)     Community wellness center on the Moapa Paiute Indian Reservation.  The wellness center will include exercise facilities, day facilities for seniors, and facilities for improving the nutritional status of reservation residents.  Estimated cost:  $1,500,000;

(b)     Purchase of water rights to mitigate risk to tribal rights pursuant to Paragraph 4 below.  Estimated cost:  $2,000,000 (the Parties agree that this estimate will not affect in any way Paragraph 4 below);

(c)     Additional stationary and mobile air-quality monitoring equipment for the Moapa Reservation; and technical assistance for air-quality monitoring.  Estimated cost:  $300,000;

(d)     Technical assistance for review of information and for implementing and effectuating the provisions of Paragraph 1, above, related to Reid Gardner Plant closure.  Estimated cost:  $400,000.

2

4.    <u>Opportunity to Purchase Water Rights Associated with Reid Gardner Plant</u>:  The Moapa Paiutes will have the right, subject to the existing right of first refusal held by the Southern Nevada Water Authority, to make a purchase of up to 500 acre-feet of the water rights associated with the Reid Gardner Plant at market price, to be completed within eighteen (18) months of, or, if arbitration as described below in Paragraph 4(c) occurs, as soon as possible after, the Effective Date of this Settlement Agreement.  In order to effectuate this process the Parties agree as follows:

(a)  Within thirty (30) days from the date the Court enters the proposed order approving the Settlement Agreement and dismissing the claims in the Action with prejudice, as described in detail in Paragraph 6, NPC shall furnish to the Moapa Paiutes in writing a list of water rights, by permit number, held by NPC, which are currently associated with or have a place of use specifying the Reid Gardner Plant.  In addition, NPC shall furnish the Moapa Paiutes a copy of the Cooperative Water Operation and Management Agreement dated October 12, 2009, that establishes a first right of refusal in favor of the Southern Nevada Water Authority.

(b)  Within thirty (30) days from the date NPC furnishes the information described in Paragraph 4(a) above, the Moapa Paiutes and NPC will schedule a date, to be held within sixty (60) days from the date NPC furnishes the information described in Paragraph 4(a) above, for representatives of the Moapa Paiutes and NPC to meet to discuss the possible water-rights purchase.  On the agreed-upon meeting date, at an agreed location, such representatives of the Moapa Paiutes and NPC will meet and discuss the possible purchase.  At such meeting, the Moapa Paiutes agree to present their request for water rights with as much detail as possible to allow NPC to evaluate the possible purchase.  At a minimum the Moapa Paiutes shall provide NPC with the quantity of water to be purchased (up to a maximum of 500 acre-feet), and the stream reach and/or hydrographic basin in which the point(s) of diversion is located.  At such meeting, NPC will provide such reasonable additional information in its possession regarding status of water rights available in the location(s) identified by the Moapa Paiutes.  The Moapa Paiutes are responsible for conducting their own due diligence with regard to the water rights.  The goal of the meeting will be to identify up to 500 acre-feet of water rights that the Moapa Paiutes and NPC agree the Moapa Paiutes may purchase (recognizing the ongoing operational needs of NPC)—subject to the rights of first refusal held by the Southern Nevada Water Authority.

(c)  Within thirty (30) days of the meeting between NPC and the Moapa Paiutes, the Moapa Paiutes shall provide a notice to NPC in writing identifying the water rights they wish to acquire from NPC.  Within thirty (30) days of receiving such notice, NPC will either accept the list provided by the Moapa Paiutes as the water rights to be subject to acquisition as provided below, or NPC may counter-propose substitute water rights, or temporary conditions or limitations on the water rights identified by the Moapa Paiutes if NPC provides written, adequately supported evidence that transfer of particular rights identified by the Moapa Paiutes would prejudice NPC's ability to reasonably operate the Reid Gardner plant prior to its closing, to support reasonable remediation activities, or to support the ongoing operational needs of

3

NPC.  The Moapa Paiutes may not simply select NPC's most senior 500 acre-feet of water rights, and the Moapa Paiutes may not assert that NPC's continuing water uses necessary for operations, or NPC's water uses necessary for remediation, are interfering with the Moapa Paiutes' own water uses.  If NPC counter-proposes as provided herein, then NPC and the Moapa Paiutes shall negotiate in good faith to complete the identification of water rights to be acquired under this Settlement Agreement, and shall complete such negotiations within thirty (30) days.  If the NPC and the Moapa Paiutes fail to reach agreement regarding the identity of such water rights, or the conditions or limitations that might be imposed, either NPC or the Moapa Paiutes may request binding arbitration before a JAMS arbitrator in Las Vegas, Nevada in conformity with the JAMS Comprehensive Arbitration Rules & Procedures, effective July 1, 2014.  Such arbitrator's decision shall be final and binding on both NPC and the Moapa Paiutes regarding the identification of water rights to be acquired under this Settlement Agreement and any additional conditions or limitations to be imposed upon such rights.  The arbitrator shall seek to identify water rights consistent with the terms and considerations contained in this Settlement Agreement.  Other deadlines and procedures as described below shall follow such final identification of such rights, by agreement and/or arbitration, and henceforth in this Settlement Agreement, those rights are referred to as the "**Water Rights**."

(d) Within thirty (30) business days of final identification of the Water Rights as described in (c) above, the Moapa Paiutes and NPC will each submit to the other the name of a professional, qualified, Nevada water-rights appraiser who is available to appraise the Water Rights.  The Moapa Paiutes and NPC each will pay the costs associated with the work of the respective appraiser it submits.  Each of those two appraisers (together, the "**Initial Appraisers**") then will be required to do the following, at the joint direction of the Moapa Paiutes and NPC:

    i.    Appraise the Water Rights at market value for similar water rights in Southern Nevada in an arid desert climate, taking into account the stream reach and/or hydrographic basin in which the Water Rights are located, the type of water right (surface or groundwater), the available uses of the Water Rights, the seniority of the Water Rights, the legal status of the Water Rights, the marketability of the Water Rights, the uses to which the Water Rights can legally and practically be applied, and any other factors the Initial Appraisers believe relevant to their market-value analyses, which will be determined solely by each appraiser.

    ii.    Submit his or her appraisal and supporting analysis, along with a statement of his or her qualifications, in writing, to both the Moapa Paiutes and NPC within thirty (30) business days of the submission in writing of both Initial Appraisers' identities to the Moapa Paiutes and NPC.

    iii.    If, based on the appraisal of the two Initial Appraisers, the Moapa Paiutes and NPC can agree on a purchase price, no further action is necessary with respect to establishing the purchase price, and the Moapa Paiutes and NPC shall execute a purchase agreement, mutually acceptable to the Moapa Paiutes and

NPC, documenting the purchase price and terms of closing consistent with the terms of this Settlement Agreement.

    iv.    If the Moapa Paiutes and NPC cannot agree on the purchase price, the Initial Appraisers shall, within ten (10) business days of either the Moapa Paiutes or NPC giving notice they have not agreed on a purchase price, identify and agree upon a third professional, qualified, Nevada water-rights appraiser who is available to appraise the Water Rights (the "**Final Appraiser**").  The Moapa Paiute and NPC will evenly split the cost of the Final Appraiser.

(e)  The Final Appraiser will evaluate each of the two Initial Appraisers' appraisals, conduct his or her own analysis based on those appraisals and, based on his or her own experience and knowledge, make a final decision regarding market value of the Water Rights based on the factors described above in 4(d)(i).  He or she will provide that final decision to the Moapa Paiutes and NPC within thirty (30) business days of his or her selection by the Initial Appraisers.

    i.    The decision of the Final Appraiser regarding market value will be a final, non-appealable decision that both the Moapa Paiutes and NPC agree will finally and forever establish the market price under this Settlement Agreement for the Water Rights.  Once this price is established, the Moapa Paiutes will notify NPC in writing within ten (10) business days whether they agree to pay such price for the Water-Rights, subject to the rights of first refusal of the Southern Nevada Water Authority as provided in the Cooperative Water Operation and Management Agreement dated October 12, 2009.  If the Moapa Paiutes do not accept the price established by the Final Appraiser NPC shall have no further obligation with respect to offering the Water Rights to the Moapa Paiutes.

(f)  Within five (5) business days of receiving notice from the Moapa Paiutes pursuant to 4(e)(i), NPC, consistent with its contractual obligations with the Southern Nevada Water Authority, will communicate with the Southern Nevada Water Authority to advise them of the bona fide water rights purchase offer from the Moapa Paiutes and provide the Southern Nevada Water Authority with an opportunity, pursuant to its rights of first refusal, to purchase the Water Rights, as provided in the Cooperative Water Operation and Management Agreement dated October 12, 2009.

(g)  If the Southern Nevada Water Authority chooses to exercise its rights of first refusal with respect to any portion of the Water Rights, NPC shall have no obligation to offer any water rights to the Moapa Paiutes to replace those over which the Southern Nevada Water Authority has exercised its rights of first refusal.  If the Southern Nevada Water Authority chooses to exercise its rights of first refusal with respect to the entirety of the Water Rights, NPC shall have no further obligation to make any water rights available to the Moapa Paiutes for purchase pursuant to Paragraph 4 of this Settlement Agreement.  If the Southern Nevada Water Authority chooses not to exercise its rights of first refusal, thereby allowing the Moapa Paiutes to purchase the Water Rights, then the Moapa Paiutes and NPC shall execute a purchase agreement,

mutually acceptable to the Moapa Paiutes and NPC, documenting the purchase price and terms of closing consistent with the terms of this Settlement Agreement, within thirty (30) days of the Southern Nevada Water Authority's decision, by which the Moapa Paiutes will pay NPC an amount of money reflecting the purchase price as established through the process described above.

(h) The Moapa Paiutes will be responsible for obtaining all permits, licenses or other governmental authorizations necessary for the Moapa Paiutes to use the Water Rights for Moapa Paiutes' purposes. In addition, it will be the responsibility of the Moapa Paiutes to confirm the Water Rights are of the quality and quantity necessary for their purposes. NPC will convey to the Moapa Paiutes the right, title and interest NPC has in the Water Rights through a quitclaim deed, without further warranty. The Moapa Paiutes will be responsible for conducting such due diligence on the Water Rights as the Moapa Paiutes deem necessary. NPC will reasonably cooperate to provide information NPC can reasonably identify it has in its possession relating to the Water Rights to the Moapa Paiutes, and NPC will execute any other documents reasonably necessary to complete the transfer contemplated by this Settlement Agreement. NPC is under no obligation pursuant to this Settlement Agreement to convey any water related infrastructure, including but not limited to wells, pumps, casings, pipes or tanks, to the Moapa Paiutes in connection with the conveyance of the Water Rights. The Moapa Paiutes shall, within sixty (60) business days of closing on the purchase of the Water Rights, file applications with the appropriate Nevada governmental agency to modify, at a minimum, the point of diversion and place of use so that the point of diversion is not from any NPC- controlled, owned, or operated point of diversion and the place of use does not include any land owned, leased, or otherwise controlled by NPC. Nothing in this Settlement Agreement grants the Moapa Paiutes the right to access or the use of any NPC water infrastructure, point of diversion, or place of use associated with any water rights, including the Water Rights, even if such water rights are owned by the Moapa Paiutes. NPC agrees that it will not oppose and will provide any material aid necessary for modification applications filed in connection with the purchase of Water Rights under this Paragraph 4, so long as such applications are filed consistent with the terms of this Settlement Agreement and do not interfere with NPC's use of its existing water rights or NPC operations.

5. Attorneys' Fees and Costs: The Parties agree that no later than the deadline prescribed by the Federal Rules of Civil Procedure, or such other date as the Court may set, Plaintiffs will submit an application for attorneys' fees and costs incurred with respect to the Action to the Court, which Defendants shall have the opportunity to oppose. Plaintiffs' ability to submit an application for attorneys' fees and costs and the Court's ability to award fees will not be affected by the release in Paragraph 8 of this Settlement Agreement.

6. Dismissal of the Claims Asserted in the Action with Prejudice and Notice to the DOJ and EPA: The Parties recognize that the proposed order and settlement of the Clean Water Act claim in the Action require notice to the United States Department of Justice ("**DOJ**") and the United States Environmental Protection Agency ("**EPA**"). Accordingly, after execution of this Settlement Agreement, Plaintiffs, with the approval of all Parties, will submit to the DOJ and

EPA as required by 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5 the following: (a) the Settlement Agreement, (b) a motion for approval of the Settlement Agreement by the Court, and for dismissal of the claims asserted in the Action with prejudice, (c) a proposed order of the Court incorporating the terms of the Settlement Agreement and the dismissal of the claims asserted in the Action with prejudice, which proposed order is attached hereto as Exhibit 1. This Settlement Agreement shall be effective as of the date of entry of the proposed order included as Exhibit 1 (the "**Effective Date**"). If the Court does not enter the proposed order in the form of Exhibit 1 or a substantially similar form containing all substantive elements of the proposed order, this Settlement Agreement shall be null and void, and Plaintiffs may request the return of this matter to the Court's trial calendar.

7.     Payment of the Supplemental Environmental Project Payment: Within seven (7) days after the entry of an order in the form included as Exhibit 1 or a substantially similar form, the Defendants shall remit the Supplemental Environmental Project Payment to the Moapa Paiutes via wire transfer.

8.     Release: The Moapa Paiutes and the Sierra Club will pursuant to the Federal Rules of Civil Procedure dismiss with prejudice the claims asserted in the Action, subject to all federal rules and case law applicable to such dismissal.

9.     No Outstanding or Known Future Claims or Causes of Action: Each Party affirms that it has not currently filed with any governmental agency or court any type of action or report against any other Party other than the Action.

10.     No Admission of Liability: The Parties to this Settlement Agreement understand and acknowledge that this Settlement Agreement constitutes a compromise of the claims alleged in the Action, and that nothing herein constitutes an admission by any Party of the merit of any claim or dispute, or any fault or liability, whatsoever in connection with the Action.

11.     Notice: All notices required or permitted under or pertaining to this Settlement Agreement shall be in writing and delivered by any method providing proof of delivery. Any notice shall be deemed to have been given on the date of receipt. Notices shall be delivered to the Parties at the following addresses until a different address has been designated by notice to the other Parties:

TO NEVADA POWER COMPANY:

NV Energy
Office of the General Counsel
6226 W. Sahara Avenue
Las Vegas, NV  89146

TO CALIFORNIA DEPARTMENT OF WATER RESOURCES:

Mark Andersen
Assistant Deputy Director, State Water Project
California Department of Water Resources
1416 9th Street, Room 1640 H10
P.O. Box 942836
Sacramento, CA  94236-0001

Linda Ackley
Attorney
Office of the Chief Counsel
California Department of Water Resources
1416 9th Street, Suite 1104
P.O. Box 942836
Sacramento, CA 94236-0001

TO THE MOAPA BAND OF PAIUTE INDIANS:

1 Lincoln Street
P.O. Box 340
Moapa, NV 89025
Attn:  Tribal Chair

TO THE SIERRA CLUB:

Sierra Club Environmental Law Program
85 Second St, second floor
San Francisco, CA 94105
Attn: Coordinating Attorney, Gloria D. Smith, Andrea Issod

12.    Entire Agreement:  This Settlement Agreement constitutes and represents the entire
agreement between the Parties with respect to the claims that are the subject of this Settlement
Agreement, and supersedes all prior understandings, negotiations, and agreements in connection
therewith.  This Settlement Agreement shall not be altered or amended in any manner except in a
writing signed by each of the Parties.

13.    Enforceability:  The Parties understand and agree that this document is binding and
enforceable.  The Court will retain jurisdiction to enforce the Settlement Agreement.  The parties
understand and agree that money damages will not be available for breach of this Settlement
Agreement.

14.    Construction:  The Parties have participated jointly in the negotiation and preparation of
this Settlement Agreement.  In the event of an ambiguity in or dispute regarding the
interpretation of the same, interpretation of this Settlement Agreement shall not be resolved by
any rule providing for interpretation against the Party who causes the uncertainty or against the

drafter, and all Parties expressly agree that in the event of an ambiguity or dispute regarding the meaning or interpretation of any provision of this Settlement Agreement, the Settlement Agreement will be interpreted as if each Party hereto participated in the drafting hereof.

15.     <u>Representation of Counsel</u>:  The Parties hereto acknowledge and agree that each has been given the opportunity to review independently this Settlement Agreement with legal counsel, and each Party agrees to the particular language of the provisions hereof.  Each Party has consulted with legal counsel before executing this Settlement Agreement, has had such legal counsel explain the meaning and effect of this Settlement Agreement, and has relied upon its own judgment in executing this Settlement Agreement with full knowledge of the meaning and effect of this Settlement Agreement.

16.     <u>Successors and Assigns</u>:  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, successors, and assigns.  Each of the Parties is an intended beneficiary of this Settlement Agreement and is and shall be expressly entitled to enforce this Settlement Agreement in so far as it operates in his, her, or its favor, including by injunctive or other equitable relief or other means, as appropriate.

17.     <u>Severability</u>:  The provisions of this Settlement Agreement are intended to be severable. Any term or provision of this Settlement Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.  To the extent that any court concludes that any provision of this Settlement Agreement is void or voidable, the court shall reform such provision to render the provision enforceable, but only to the extent absolutely necessary to render the provision enforceable.

18.     <u>Authorization</u>:  The undersigned individuals executing this Settlement Agreement on behalf of their respective Parties represent and warrant that they are authorized to enter into and execute this Settlement Agreement on behalf of such Parties, that the appropriate corporate resolutions or other consents, including an official authorization by the Moapa Paiutes' tribal council, have been passed or obtained, and that this Settlement Agreement shall be binding on the Parties.  The Moapa Paiutes represent and warrant that they do not need or require the approval of the Bureau of Indian Affairs to enter into this Settlement Agreement.

19.     <u>Governing Law</u>:  To the extent required, this Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Nevada.  Should any dispute arise regarding this Settlement Agreement, venue shall be in the United States District Court for the District of Nevada in Las Vegas.

20.     <u>Counterparts</u>:  This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument.  A counterpart shall include a PDF, scan or facsimile of the Settlement Agreement.

21.    <u>Amendment and Waiver</u>:  No amendment of any provision of this Settlement Agreement shall be valid unless the same shall be in writing and signed by each of the Parties.  No waiver by any Party hereto of any default, misrepresentation, or breach of covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of covenant hereunder, or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.  No failure on the part of any Party hereto to exercise, and no delay in exercising, any right, power, or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power, or remedy by such Party preclude any other or future exercise thereof or the exercise of any other right, power, or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by applicable law.

22.    <u>Headings</u>:  The division of this Settlement Agreement into paragraphs, sections, subparagraphs, and subsections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Settlement Agreement.  The paragraph, section, subparagraph, and subsection headings in this Settlement Agreement are not intended to be full or precise descriptions of the text to which they refer and are not to be considered part of this Settlement Agreement.

23.    <u>Miscellaneous</u>:

(a)    The Parties intend that the execution and performance of this Settlement Agreement shall, as provided above, be effective as a full and final settlement of, and as a bar to, the claims dismissed pursuant to Paragraph 8.  The Parties hereto covenant and agree that if they hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the claims dismissed pursuant to Paragraph 8, it is nevertheless their intent hereby to settle and release fully and finally the claims dismissed pursuant to Paragraph 8.  In furtherance of such intention, the Release in Paragraph 8 herein shall be and will remain in effect as a release notwithstanding the discovery of any such different or additional facts.

(b)    Each Party agrees to execute and deliver such other documents and instruments and to take such further action as may be reasonably necessary to fully carry out the intent and purposes of this Settlement Agreement.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, each of the Parties hereto has caused this Settlement Agreement to be executed and delivered by its duly authorized officer, as of the Effective Date.

THE MOAPA BAND OF PAIUTE INDIANS

NAME: _Darren Daboda_

TITLE: _Chairman_

DATED: _07 16 15_

SIERRA CLUB

NAME: _Celsric   Smith_

TITLE: _managing attorney_

DATED: _07.17.15_

NEVADA POWER COMPANY d/b/a
NV ENERGY

NAME: _____

TITLE: _____

DATED: _____

CALIFORNIA DEPARTMENT OF WATER
RESOURCES

NAME: _____

TITLE: _____

DATED: _____

11

IN WITNESS WHEREOF, each of the Parties hereto has caused this Settlement Agreement to be executed and delivered by its duly authorized officer, as of the Effective Date.

THE MOAPA BAND OF PAIUTE INDIANS

NAME: _____

TITLE: _____

DATED: _____

SIERRA CLUB

NAME: _____

TITLE: _____

DATED: _____

NEVADA POWER COMPANY d/b/a
NV ENERGY

NAME: _____

TITLE: _____

DATED: _____

CALIFORNIA DEPARTMENT OF WATER
RESOURCES

NAME: _____

TITLE: _____

DATED: _____

11

IN WITNESS WHEREOF, each of the Parties hereto has caused this Settlement Agreement to be executed and delivered by its duly authorized officer, as of the Effective Date.

THE MOAPA BAND OF PAIUTE INDIANS

NAME: _____
TITLE: _____
DATED: _____

SIERRA CLUB

NAME: _____
TITLE: _____
DATED: _____

NEVADA POWER COMPANY d/b/a
NV ENERGY

NAME: _____
TITLE: _____
DATED: _____

CALIFORNIA DEPARTMENT OF WATER
RESOURCES

NAME: MARK E. ANDERSEN
TITLE: ASSISTANT SWP DEPUTY DIRECTOR
DATED: 7/21/15

11

# Exhibit 1

# To Proposed Settlement Agreement

ROBERT B. WIYGUL, ESQ. (*pro hac vice*)
Waltzer Wiygul & Garside, LLC
1011 Iberville Drive
Ocean Springs, MS 39564
Tel: 228-872-1125
Fax: 228-872-1128
robert@waltzerlaw.com

*Counsel for Plaintiffs*

ANDREW C. LILLIE (*pro hac vice*)
JESSICA BLACK LIVINGSTON (*pro hac vice*)
Hogan Lovells US LLP
1200 17th Street, Suite 1500
Denver, CO  80202
Phone: (303) 899-7300
Fax: (303) 899-7333
andrew.lillie@hoganlovells.com
jessica.livingston@hoganlovells.com

*Counsel for Defendant Nevada Power Co.*

ANDREW K. GORDON *(pro hac vice)*
Duane Morris LLP
One Market Plaza, Suite 2200
San Francisco, CA 94105
Phone: (415) 957-3000
Fax: (415) 957-3001
akgordon@duanemorris.com

*Counsel for Defendant California Department of Water Resources*

*Additional counsel on signature page*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

1

| THE MOAPA BAND OF PAIUTE INDIANS, a federally recognized Tribe of Indians, | ) | Case No. 2:13-cv-01417-JAD-NJK |
|---|---|---|
| and | ) ) ) | AGREED ORDER ON MOTION TO APPROVE SETTLEMENT AND DISMISS CLAIMS WITH PREJUDICE |
| SIERRA CLUB, a California non-profit corporation, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| NEVADA POWER CO., d/b/a NV ENERGY, | ) ) | |
| and | ) | |
| CALIFORNIA DEPARTMENT OF WATER RESOURCES | ) ) ) | |
| Defendants. | ) ) ) | |
| | ) ) ) ) | |

## AGREED ORDER ON MOTION TO APPROVE SETTLEMENT AND DISMISS CLAIMS WITH PREJUDICE

This matter comes before the Court on the parties' Joint Motion to Approve Settlement Agreement. The Court, having reviewed the proposed settlement, the joint motion, and the pleadings, and being fully advised in the premises, finds as follows:

1. The Court has jurisdiction of this matter.

2. This case is a citizen suit under the federal Clean Water Act, 33 U.S.C. §§1251 *et seq*, ("CWA") and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq*. ("RCRA").

3. Notice of the proposed Settlement Agreement pursuant to 33 U.S.C. § 1365(c) and 40 C.F.R. § 135.5 was given to the United States Department of Justice and the United States Environmental Protection Agency on _____, 2015. The Department of Justice and the

2

Environmental Protection Agency submitted comments to the Court on _____.

4.   The settlement is appropriate for approval under the CWA and the RCRA.

5.   The parties shall comply with the terms of their Settlement Agreement entered into on July 16, 2015, a copy of which is attached and incorporated by reference as if fully set forth herein.

6.   The claims asserted in this action are dismissed with prejudice.  The Court expressly retains jurisdiction over the matter for the purposes of (i) enforcing the Settlement Agreement entered into between the parties and the terms of the Settlement Agreement incorporated herein by reference, and (ii) deciding any applications for attorney fees and costs.

SO ORDERED this ___ day of _____, 2015.


_____
UNITED STATES DISTRICT JUDGE

3

*Submitted by:*

s/ Robert B. Wiygul
ROBERT B. WIYGUL, ESQ. (*pro hac vice*)
Waltzer Wiygul & Garside, LLC
1011 Iberville Drive
Ocean Springs, MS 39564
Tel: 228-872-1125
Fax: 228-872-1128
robert@waltzerlaw.com

*Counsel for Plaintiffs*

s/ Gloria D. Smith
GLORIA D. SMITH, ESQ. (*pro hac vice*)
California Bar No. 200824
Sierra Club Environmental Law Program
85 Second Street
San Francisco, CA 94105
(415) 977-5532/ Fax: (415) 977-5793
gloria.smith@sierraclub.org

*Counsel for Plaintiff Sierra Club*

s/ Christopher W. Mixson
CHRISTOPHER W. MIXSON, ESQ.
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
Nevada Bar No. 10685
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
cmixson@wrslawyers.com

*Local Counsel for Plaintiffs*

s/ Andrew C. Lillie
ANDREW C. LILLIE (*pro hac vice*)
JESSICA BLACK LIVINGSTON (*pro hac vice*)
Hogan Lovells US LLP
1200 17th Street, Suite 1500
Denver, CO  80202
Phone: (303) 899-7300
Fax: (303) 899-7333
andrew.lillie@hoganlovells.com
jessica.livingston@hoganlovells.com

*Counsel for Defendant Nevada Power Co.*

s/ Andrew K. Gordon
ANDREW K. GORDON (*pro hac vice*)
Duane Morris LLP
One Market Plaza, Suite 2200
San Francisco, CA 94105
Phone: (415) 957-3000
Fax: (415) 957-3001
akgordon@duanemorris.com

*Counsel for Defendant California Department of Water Resources*

Kamala D. Harris
ATTORNEY GENERAL OF CALIFORNIA
Annadel A. Almendras
Supervising Deputy Attorney General
s/ Gary Alexander
Nhu Q. Nguyen
Deputy Attorneys General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102
T: 415.703.5599; F: 415.703.5480
gary.alexander@doj.ca.gov

*Counsel for Defendant California Department of Water Resources*